# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

FRANK LEE MITCHELL                                                    PLAINTIFF


v.                              NO. 3:08CV00034 HDY


MICHAEL J. ASTRUE,                                                    DEFENDANT
Commissioner of the Social
Security Administration


<u>MEMORANDUM OPINION AND ORDER</u>


<u>BACKGROUND</u>.   The record reflects that in March of 2005, plaintiff Frank Lee Mitchell ("Mitchell") filed applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). His applications were denied initially and upon reconsideration.  He next requested, and received, a <u>de novo</u> administrative hearing before an Administrative Law Judge ("ALJ"). In July of 2007, the ALJ issued a ruling adverse to Mitchell.  He appealed the ruling to the Appeals Council where the decision of the ALJ was modified but nevertheless affirmed.  The decision of the ALJ, as modified by the Appeals Council, became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In March of 2008, Mitchell commenced the proceeding at bar in which he challenged the final decision of the Commissioner.

STANDARD OF REVIEW.  The sole inquiry for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions."  See Id. at 1012.

THE ALJ'S FINDINGS.  The ALJ made findings pursuant to the five step sequential evaluation process.  At step one, the ALJ found that Mitchell has not engaged in substantial gainful activity since the amended onset date of March 4, 2005.  At step two, the ALJ found that Mitchell is severely impaired as a result of rheumatoid arthritis and hepatitis C.  At step three, the ALJ found that Mitchell does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations.  The ALJ then assessed Mitchell's residual functional capacity and found that he retains sufficient residual functional capacity to perform the full range of light work activity on a sustained basis.  At step four, the ALJ found that Mitchell is incapable of performing his past relevant work as a certified nurse's assistant because the occupation requires at least medium exertion.  At step five, the ALJ found that, considering Mitchell's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines ("Grids"), there are other jobs that exist in significant numbers in the national economy that he can perform.  Given that finding, the ALJ concluded that Mitchell is not disabled within the meaning of the Act.

APPEALS COUNCIL MODIFICATION.  Mitchell appealed the ruling of the ALJ.  The Appeals Council adopted the findings made by the ALJ but modified "the findings regarding [Mitchell's] residual functional capacity."  See Transcript at 7.  With regard to that issue, the Appeals Council found that Mitchell retains sufficient residual functional capacity for "light duty work with some limitation on fine repetitive motion."  See Transcript at 8.[1]

MITCHELL'S ASSERTIONS.   Are the Commissioner's findings, specifically, the findings made by the ALJ and modified by the Appeals Council, supported by substantial evidence on the record as a whole?  Mitchell thinks not and advances the following reasons why: (1) the Commissioner erred by failing to address the findings of Dr. Nidal Rahal ("Rahal"), a treating physician, and by rejecting the findings of Dr. Sudhir Kumar ("Kumar"), a consultative physician; (2) the Commissioner erred by "rejecting [Mitchell's] testimony without citing reasons supported by substantial evidence," see Document 11 at 12; (3) the Commissioner erred by failing to follow Social Security Ruling 96-8p when assessing Mitchell's residual functional capacity; and (4) the Commissioner erred by "basing the disability determination solely upon the 'framework' of the grids and failing to call a vocational expert when [Mitchell] clearly has significant 'nonexertional' impairments," see Document 11 at 19.

---

[1]

The Appeals Council specifically found that Mitchell has "a nonexertional limitation of fine repetitive motion.  This fingering restriction would allow for frequent, but not repetitive[,] fine fingering."  See Transcript at 9.

THE FINDINGS OF RAHAL AND KUMAR.    Mitchell first maintains that the Commissioner erred by failing to address the findings of Rahal, whom the Court accepts is Mitchell's treating physician, and by rejecting the findings of Kumar, whom the Court accepts is a consultative physician.  In support of that assertion, Mitchell advances the following assertions: (A) the Commissioner erroneously accepted the findings of Dr. Edward Alexander ("Alexander"), whom the Court accepts is also a consultative physician; and (B) the Commissioner rejected Kumar's findings without supporting substantial evidence.

The weight to be given a treating physician's medical opinion is clear.  In Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006), the Court of Appeals articulated that weight as follows:

> A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  These opinions are not automatically controlling, however, because the record must be evaluated as a whole.  Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir.2005).  We will uphold [the Commissioner's] decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  Id. at 920-21 …

The weight to be given a consulting physician's medical opinion is not as great.  It is instead to be given limited weight.  See Anderson v. Heckler, 738 F.2d 959 (8th Cir. 1984).

-4-

Does substantial evidence on the record as a whole support the Commissioner's findings as to the findings made by Rahal and the consultative physicians? For the reasons that follow, the Court thinks not.

First, the record reflects that Mitchell was seen by Rahal on three occasions. <u>See</u> Transcript at 98, 116, and 122.[2] Sadly, the Commissioner did not state the extent to which Rahal's findings were found to be credible; instead, the Commissioner simply summarized Rahal's findings. It is therefore difficult to ascertain the weight the Commissioner accorded Rahal's findings.

Second, notwithstanding the foregoing, it appears that the Commissioner did not give controlling weight to Rahal's findings as the Commissioner discounted some of Rahal's findings. In so doing, the Commissioner failed to identify what other medical assessments are supported by better or more thorough medical evidence or that Rahal offered inconsistent opinions of Mitchell's condition.

Third, notwithstanding the foregoing, it appears that the Commissioner discounted some of Rahal's findings on account of Alexander's findings. <u>See</u> Transcript at 8. There is no evidence, however, that Alexander's findings are supported by better or more thorough medical evidence than the findings made by Rahal. Alexander never examined Mitchell but simply reviewed the medical evidence in offering his findings.

---

[2]

The Court has compared Rahal's findings from those visits with the Commissioner's summary of those findings. The Court is satisfied that the Commissioner accurately summarized Rahal's findings, and it is unnecessary for the Court to repeat Rahal's findings

Fourth, the Commissioner rejected Kumar's findings because they were not supported by the record as a whole.   The Court notes, however, that Kumar's examination of Mitchell is more recent in time than any other examination and that his findings, although more restrictive than those made by Rahal, support Rahal's findings.

As the foregoing demonstrates, there is considerable confusion as to the weight the Commissioner gave the the findings of Rahal and the consultative physicians. Because this confusion exists, a remand is warranted.   Upon remand, the Commissioner shall first, identify the weight accorded Rahal's findings; second, if controlling weight is not given to his findings, the Commissioner should identify what other medical findings are supported by better or more thorough medical evidence or whether Rahal offered inconsistent opinions of Mitchell's condition; and third, if Alexander's findings are given controlling weight, why they are accorded such weight.

MITCHELL'S RESIDUAL FUNCTIONAL CAPACITY.  Mitchell next maintains that his residual functional capacity was not properly assessed because the Commissioner did not follow Social Security Ruling 96-8p.  In support of that claim, Mitchell advances the following assertions: (1) the Commissioner did not address whether Mitchell could work on a regular and continuous basis for the typical work week, e.g, eight hours a day, five days a week; (2) the Commissioner did not perform a function-by-function assessment of Mitchell's abilities; and (3) the Commissioner did not consider all of Mitchell's impairments and limitations.

A claimant's residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004) [citing 20 C.F.R. 404.1545(a)(1)]. The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace." See Id. at 539 [citing Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003)].

Does substantial evidence on the record as a whole support the Commissioner's findings as to Mitchell's residual functional capacity? For the reason that follows, the Court thinks not.

The record reflects that the Commissioner summarized the competing findings made by the various physicians and then opined that the most accurate finding as to Mitchell's residual functional capacities lies "somewhere in between." See Transcript at 29. The Commissioner found that the point somewhere in between was the point which allowed Mitchell to perform "light duty work with some limitation on fine repetitive motion." See Transcript at 8. It is not clear, however, what evidence, medical and/or otherwise, specifically supports that finding. Mitchell's residual functional capacity may indeed rest somewhere in between the competing findings made by the various physicians, but the Commissioner's finding as to that matter must be specifically supported by something, namely, some well-supported finding as to the most Mitchell can do despite his limitations.

Given the foregoing, a remand is warrant as to Mitchell's residual functional capacity. Upon remand, the Commissioner shall identify the specific evidence, medical and/or otherwise, supporting the finding as to Mitchell's residual functional capacity.

THE USE OF THE GRIDS. Mitchell last maintains that the Commissioner erred by "basing the disability determination solely upon the 'framework' of the grids and failing to call a vocational expert when [Mitchell] clearly has significant 'non-exertional' impairments." See Document 11 at 19.[3] Mitchell maintains that he has non-exertional impairments, which include pain.

In Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005), the United States Court of Appeals for the Eighth Circuit provided the following guidance in the use of the Grids:

> The [Commissioner] may not rely on the [G]rids if [the claimant] suffers from non-exertional impairments, but instead must obtain the opinion of a vocational expert. [Citation omitted]. Non-exertional impairments that "do[ ] not diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities" do not prevent use of the [G]rids, however. [Citation omitted].

See also Baker v. Barnhart, 457 F.3d 882, 894 (8th Cir. 2006).

Does substantial evidence on the record as a whole support the Commissioner's finding as to the absence of a non-exertional impairment, which therefore permits the use of the Grids? For the reason that follows, the Court thinks not.

---

[3] The Court notes that this assertion was not addressed in the Commissioner's brief.

The Commissioner found that "the evidence establishes the existence of a severe impairment which can reasonably be expected to produce some degree of pain and discomfort." <u>See</u> Transcript at 29. Thus, the Commissioner found that Mitchell experiences some pain, which is clearly a non-exertional impairment. The Commissioner obviously discounted the severity of the pain as the Grids were used. The Commissioner failed to explain, however, why Mitchell's pain was discounted.[4]

Given the foregoing, a remand is warranted as to the Commissioner's use of the Grids. Upon remand, the Commissioner shall determine whether Mitchell has one or more non-exertional impairments. If so, the Commissioner should refrain from using the Grids but should instead solicit the testimony of a vocational expert.

<u>CONCLUSION</u>. The Court finds that the Commissioner's findings are not supported by substantial evidence on the record as a whole. A remand is therefore warranted. Upon remand, the following shall occur:

(A) WITH REGARD TO THE FINDINGS OF RAHAL AND THE CONSULTATIVE PHYSICIANS,

the Commissioner shall first identify the weight accorded Rahal's findings;

---

[4]

The Commissioner discounted Mitchell's pain in the context of discussing <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir.1984), and Social Security Ruling 96-7p. It may be that the Commissioner's treatment of Mitchell's pain in that context is the same as his treatment of Mitchell's pain at step five, but the Court does not know that for a fact.

second, if controlling weight is not given to Rahal's findings, the Commissioner should identify what other medical findings are supported by better or more thorough medical evidence or whether Rahal offered inconsistent opinions of Mitchell's condition;

and third, if Alexander's findings are given controlling weight, why they are accorded such weight.

**(B)  WITH REGARD TO MITCHELL'S RESIDUAL FUNCTIONAL CAPACITY**, the Commissioner shall identify the specific evidence, medical and/or otherwise, supporting the finding as to Mitchell's residual functional capacity; and

**(C) WITH REGARD TO THE COMMISSIONER'S USE OF THE GRIDS**,

The Commissioner shall first determine whether Mitchell has one or more non-exertional impairments.

If so, the Commissioner should refrain from using the Grids but should instead solicit the testimony of a vocational expert.

The Commissioner's decision is reversed, and this proceeding is remanded.  This remand is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991).  Judgment will be entered for Mitchell.

IT IS SO ORDERED this ___15___ day of December, 2008.

_____
UNITED STATES MAGISTRATE JUDGE